UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LISA PAFUME                   :
                                    :
        v.                  :       C.A. No. 11-310A
                                      :
MICHAEL J. ASTRUE,         :
Commissioner of the Social Security   :
Administration               :

## MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Richard Pafume[1] Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g). The Complaint was filed on July 26, 2011 seeking to reverse the decision of the Commissioner. On February 15, 2012, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 9). On May 10, 2012, the Commissioner filed a Motion for Order Affirming the Decision of the Commissioner. (Document No. 12). Plaintiff filed a reply brief on May 28, 2012. (Document No. 13).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not

---

[1] This appeal was filed by Lisa Pafume as an eligible surviving spouse of Richard Pafume pursuant to 20 C.F.R. § 416.542(b). Mr. Pafume died on May 8, 2011.

disabled within the meaning of the Act.  Consequently, I order that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 12) be GRANTED and Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 9) be DENIED.

## I.    PROCEDURAL HISTORY

Mr. Pafume filed applications for DIB (Tr. 172-176) and SSI (Tr. 177-184) on January 30, 2008 alleging disability as of January 1, 2005.  Mr. Pafume was insured for DIB only through June 30, 2006.  (Tr. 8).  The applications were denied initially on September 15, 2008 (Tr. 73-78) and on reconsideration on August 25, 2009.  (Tr. 82-88).  Plaintiff requested an administrative hearing on August 25, 2009.  (Tr. 88).  On October 21, 2010, a hearing was held before Administrative Law Judge Randy Riley (the "ALJ") at which time Mr. Pafume, represented by counsel,  a vocational expert ("VE") and a medical expert ("ME") appeared and testified.  (Tr. 41-68).  A supplemental hearing was held on February 1, 2011 at which time Mr. Pafume, represented by counsel,  a vocational expert ("VE") and a medical expert ("ME") appeared and testified.  (Tr. 23-34). The ALJ issued an adverse decision on February 16, 2011.  (Tr. 4-22).  The claim was selected for review by the Decision Review Board, and on May 23, 2011, the Decision Review Board advised that it had not completed its review of the ALJ's decision within the time allowed and that the ALJ's decision had become final.  (Tr. 1-3).  A timely appeal was then filed in this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 2 by not finding Mr. Pafume's personality disorder to be a severe impairment, and by failing to properly evaluate and weigh the medical evidence.

The Commissioner disputes Plaintiff's claims and argues that the ALJ properly evaluated the medical evidence, and that his RFC and non-disability findings are supported by substantial evidence and must be affirmed.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where

all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Jackson, 99 F.3d at 1095.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

### IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the

nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed

impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision. <u>Carrillo Marin v. Sec'y of Health and Human Servs.</u>, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. <u>Seavey</u>, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. <u>Deblois v. Sec'y of Health and Human Servs.</u>, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. <u>Id.</u>

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. <u>Seavey</u>, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). <u>Seavey</u>, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. <u>Heggarty</u>, 947 F.2d

at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

## 2.      Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.      APPLICATION AND ANALYSIS

Plaintiff was forty years old at the time of the ALJ's decision.  (Tr. 45).  He had a seventh grade education and worked in the relevant past as a loan officer, dispatch supervisor, convenience store clerk, telemarketer and landscaper. (Tr. 31, 47).  Mr. Pafume claimed disability due to

blindness in his right eye, C6-C7 ruptured disc, anxiety, fibromyalgia, bronchial asthma, left foot problems, chronic headaches, neck and shoulder problems and Hepatitis C. (Tr. 223).

The Commissioner does not dispute the summary of medical evidence presented by Plaintiff at pages 9-12 of her brief. (Document No. 9 at pp. 9-12). Thus, the Court adopts and incorporates this undisputed summary by reference. However, the Commissioner also relies upon additional medical evidence in the record which is summarized below. First, Dr. Paolino, a psychiatrist, appears to have seen Mr. Pafume on several occasions prior to preparing his assessment of his capacities in June 2010. (See Tr. 761-765). On the initial visit, no psychological abnormalities beyond a depressed, sad and anxious (yet pleasant) affect were noted. (Tr. 757-759). Later office notes document no other symptoms or signs, and indicate either no change or that symptoms had decreased. (Tr. 763-765).

Mr. Pafume was seen by Dr. O'Hair, his primary care physician, on a regular basis during 2007 (and into early 2008). These notes show that depression (and other psychiatric problems) were rarely reported (or noted). (Tr. 294, 317, 346, 364, 368, 371, 372, 376, 378, 382, 385, 387, 391).

When seen in the emergency room for treatment of pneumonia in February 2008, Mr. Pafume did not report any psychiatric symptoms. (Tr. 421). In March 2008, when seen by Dr. Fishman in a follow-up for hepatitis, Mr. Pafume denied depression, sleep problems, nervousness and anxiety. (Tr. 618).

Contrary to his report to the SSA in 2008 (Tr. 209), Mr. Pafume told Dr. Paolino in 2010 that he had quit working as a loan officer because he was terminated due to inability to do this job. (Tr. 522).

At the time of Dr. Fontaine's psychological evaluation of Mr. Pafume in May 2008, Mr. Pafume told Dr. Fontaine that he spent his days looking for work, but that due to his past felony convictions, he was having difficulty finding work. (Tr. 447). Mr. Pafume explained that although he would apply for jobs, whenever a prospective employer did a "BCI" background check, he would not receive a job offer. Id. Mr. Pafume also seemed to indicate that he was currently doing some work "in the telecommunications area as an installer." (Tr. 448).

In January 2009, Mr. Pafume told Dr. Rosenberg (who he saw in connection with fibromyalgia treatment) that he was "working in his own construction business." (Tr. 515).

In November 2009, Mr. Pafume told Dr. Paolino that he was currently a self-employed construction worker. (Tr. 751). He described his typical day as getting up at 7:00 a.m. to help his kids get ready for school, going to work until 5:00 p.m., coming home and eating, and then staying in his room. (Tr. 752).

When seen by Dr. Fishman in January 2010 (for abdominal pain), Mr. Pafume showed no signs of depression, anxiety, or memory problems. (Tr. 621). Dr. Fishman's mental status examination findings were similar in June 2010. (Tr. 623).

At the time of Dr. DuWors' psychological evaluation of Mr. Pafume in May 2010, Dr. DuWors noted that MMPI testing "yielded such a negative response profile that the overall testing was seen as invalid." (Tr. 35). MCMI findings suggested "a moderate tendency towards self-deprecation and a consequent exaggeration of current emotional problems." Id. Dr. DuWors noted that in interpreting the profile, one "should be aware that the patient may have reported more psychological symptoms than objectively exist." Id.

In May 2010, when Mr. Pafume saw Dr. Morrissey in connection with injuries sustained in a recent fall, he told Dr. Morrissey that he had been working on a full-time basis doing foreclosure cleanups with his brother. (Tr. 685).

In August 2010, Mr. Pafume told Dr. Machata that he was working in construction (self-employed). (Tr. 887). At that time, Dr. Machata interpreted a depression screening as showing only minimal depression. Id.

At his hearing in February 2011, Mr. Pafume stated that he met with his therapist Mr. Keating once or twice a week. (Tr. 61). Records submitted into evidence show that in May 2010, Mr. Keating assessed Mr. Pafume's global functioning (currently and over the past year) at 60. (Tr. 627). In June 2010, Mr. Keating recorded essentially normal findings on mental status, other than noting Mr. Pafume was distractable. (Tr. 629).

## A.     The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2005 but noted evidence in the record of other work performed subsequently by Plaintiff. (Tr. 9). At Step 2, Plaintiff was found to have the following severe impairments as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c): anxiety disorder, ADHD, degenerative disc disease, COPD, fibromyalgia, right eye blindness, Hepatitis C, right shoulder disorder, PTSD and borderline intellectual functioning. (Tr. 10). As to RFC, the ALJ found that Plaintiff was able to perform a range of light work limited by certain postural and environmental limitations. (Tr. 11-12). Plaintiff was also limited to work not requiring right-eye depth perception or binocular vision, and to work involving 1-3 step tasks that is isolated with occasional supervision. (Tr. 12). In making this finding, the ALJ determined that the

-14-

Plaintiff's testimony as to his limitations was not entirely credible in part because the records indicated that Plaintiff worked after his alleged disability onset date. (Tr. 18). Finally, based on this RFC and testimony from the VE, the ALJ rendered a no-disability finding at Step 5 that Plaintiff was capable of performing several unskilled light and sedentary jobs that exist in significant numbers in the economy. (Tr. 21-22).

**B.      Plaintiff Has Shown No Error in the ALJ's Evaluation of the Medical Evidence**

Plaintiff's appeal focuses on the degree of mental limitations found by the ALJ. In particular, Plaintiff argues that the ALJ did not give enough weight to the opinions of Dr. Parsons and Dr. Paolino and too much weight to the opinions of Dr. Paxson and Dr. Gordon.

First, as to Dr. Paolino, a treating psychiatrist, the ALJ discredited his opinions because they were "based on [Mr. Pafume's] reports, which were not consistent with his reported activities in the record or observations by other sources" and "not consistent with [his] report to him [on November 23, 2009] that he was a self-employed construction worker that worked until 5 pm daily." (Tr. 20, 752). In addition, contrary to Mr. Pafume's assertions of disability as of January 1, 2005, he completed a history questionnaire for Dr. Paolino in 2009 in which he identified his "current employer" as "self employed construction" for five years. (Tr. 751). He also described a "typical day" as "get up @ 7am help kids for school, go to work till 5pm then eat then stay in bedroom." (Tr. 752).[2] Yet, when he met with Dr. Paolino in 2010 to get an evaluation in support of his disability application, Mr. Pafume told Dr. Paolino that he had not worked since 2007 and that he was terminated because he was unable to do the job. (Tr. 522). However, in 2008, Mr. Pafume reported

_____

[2] Furthermore, Mr. Pafume reported to Dr. Rosenberg in 2009 that "he is working in his own construction business," (Tr. 515); to Dr. Morrissey in 2010 that he "is working with his brother," "normally it is a full time job" and that he has been out of work totally since he fell on May 25, 2010, (Tr. 685); and to Dr. Machata in 2010 that he was "working – construction – self-employed." (Tr. 887).

that he was terminated in 2007 because "the company closed my position and moved to another location." (Tr. 209).

As to Dr. Paolino's treatment records, the ME, Dr. Ruggiano, testified that he expected "there to be a mountain of treatment notes" in view of the contents of Dr. Paolino's psychiatric evaluation that Mr. Pafume had four severe Axis I mental disorders (Ex. 27F) but that his underlying treatment notes are few, "incomprehensible" and "say nothing." (Tr. 27-28); see also 20 C.F.R. § 416.927(d)(3) ("[t]he more a medical source presents relevant evidence to support an opinion...the more weight we will give that opinion"). Plaintiff also concedes in her brief that Dr. Paolino's underlying treatment notes are "sparse." (Document No. 9 at p. 16).

Second, as to Dr. Parsons, he evaluated Mr. Pafume on May 26, 2009 at the request of his attorney. (Ex. 23F). The ALJ gave Dr. Parsons' opinions "limited weight" because they were obtained by counsel for the sole purpose of supporting the disability application and were "inconsistent with the findings of other sources as well as [Mr. Pafume's] reported activities in the record." (Tr. 20). Again, contrary to the record, Mr. Pafume told Dr. Parsons in May 2009 that he was unemployed for two years and "spends most of his day in his room." (Tr. 504, 506). Yet, Mr. Pafume told Dr. Rosenberg in February 2009 that "he is working in his own construction business." (Tr. 515). He also told Dr. Parsons that he was "looking for work" which is inconsistent with his assertion of disability. (Tr. 504). Finally, in 2008, Mr. Pafume attributed his difficulty finding work to his criminal record and not his disabilities. (Tr. 447). In her reply, Plaintiff concedes that "the record clearly reflects inconsistency regarding [Mr. Pafume's] self-reporting of employment." (Document No. 13 at p. 2).

Here, the ALJ's RFC assessment is supported by the opinion of Dr. Fontaine, a consultative examining psychologist (Tr. 450); the GAF rating of 60 (moderate symptoms) rendered by Mr. Keating, a treating therapist; and consistent with the assessments of Dr. Paxson and Dr. Gordon, consulting psychologists, (Exs. 13F, 14F and 24F). Thus, it has adequate record support. See Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.").

Plaintiff has not established any legal basis for reversing the ALJ's non-disability determination. While reasonable minds could differ as to the interpretation of the medical evidence, the issue is not whether this Court would have reached the same conclusion as did the ALJ. "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, (1st Cir. 1987)). Rather, the issue is whether the ALJ's RFC finding and non-disability determination have adequate support in the record. Since they do, there is no basis upon which to reject them in this case.

### C.  Plaintiff Has Shown No Error in the ALJ's "Paragraph B" Criteria Finding at Step 3

In order to meet the "paragraph B" criteria for mental impairments, a claimant's impairments must result in at least two of the following: a marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and/or repeated episodes of decompensation. See generally Listing 12.00 (Mental Disorders). In this case, the ALJ found that Mr. Pafume had only moderate difficulties in

social functioning and concentration which he accounted for in his RFC finding. (Tr. 11). He also found no restriction in activities of daily living and no episodes of decompensation. Id. Plaintiff faults the ALJ for rejecting the opinions of Dr. Parsons and Dr. Paolino in this regard. (Tr. 512, 528). However, as noted above, the opinions of Dr. Parsons and Dr. Paolino were based in large part on the reports of Mr. Pafume, and the ALJ did not find Mr. Pafume's statements regarding his limitations to be "entirely credible." (Tr. 18). Plaintiff has not challenged the ALJ's adverse credibility finding and concedes that "the record clearly reflects inconsistency regarding [Mr. Pafume's] self-reporting of employment." (Document No. 13 at p. 2). Since Plaintiff has shown no error as to the ALJ's evaluation of the opinions of Dr. Parsons and Dr. Paolino, she has also shown no error in his evaluation of the "paragraph B" criteria. Finally, Plaintiff argues that the ALJ had no basis in the record for his "paragraph B" findings because he did not exactly adopt the opinions of Dr. Paxson and Dr. Gordon. (Tr. 462, 514). In particular, Dr. Paxson and Dr. Gordon agreed that Plaintiff had only a mild difficulty in concentration but the ALJ gave Mr. Pafume "the benefit of the doubt in assessing a moderate limitation in this area." (Tr. 11). Plaintiff has not identified any law that would make such an allowance in the claimant's favor reversible error.

### D.     Plaintiff Has Shown No Reversible Error in the ALJ's Step 2 Findings

At Step 2, the ALJ found Mr. Pafume's anxiety disorder, ADHD, PTSD and borderline intellectual functioning to be severe mental impairments. (Tr. 10). Plaintiff contends that the ALJ erred by failing to also find at Step 2 that Mr. Pafume suffered from a "severe" personality disorder.

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe"

when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28. Although Step 2 is a de minimis standard, Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof. See Desjardins v. Astrue, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009).

An ALJ may properly base her Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe medically determinable physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c) (emphasis added). See also Teves v. Astrue, No. 08-246-B-W, 2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence."). At Step 2, Mr. Pafume bore the burden of demonstrating that he had a "medically determinable" mental impairment(s) that significantly limited his ability to do basic work activity at the relevant time, i.e., prior to June 30, 2006. Id. The ALJ found that Mr. Pafume met that burden as to four mental impairments but not as to personality disorder, and Plaintiff has shown no error in his finding.

The record is far from clear as to the presence of a personality disorder. First, neither Dr. Parsons nor Dr. Paolino found Mr. Pafume to have a personality disorder in the reports they prepared for Plaintiff's counsel. (Tr. 510, 527). Dr. Ruggiano, the ME, did not testify as to the presence of a personality disorder. (Tr. 27). Dr. DuWors assessed various forms of personality disorder in his June 2010 report. (Tr. 40). However, Plaintiff concedes that his report was submitted

post-hearing and not considered by either the ALJ or the ME. (Document No. 9 at p. 14).[3] Plaintiff does not explain why Dr. DuWors' report was not submitted earlier in the process or provide any legal analysis regarding the relevance on appeal of medical evidence presented after the ALJ hearing and after (or at best contemporaneously with) the ALJ's decision.

Dr. Parson and Dr. Gordon assessed a personality disorder. (Tr. 459, 514). However, as to functional limitations, they found only a moderate difficulty in maintaining social functioning which is consistent with both the ALJ's "paragraph B" analysis and RFC assessment. (Tr. 11-12, 462, 514). Finally, while Dr. Fontaine assessed a personality disorder, he assessed a GAF of 60 reflecting moderate symptoms and the possibility of "moderate difficulties dealing with supervision and co-workers within the work setting." (Tr. 449-450). Again, these findings are consistent with the ALJ's findings.

Finally, even if Plaintiff could establish that the ALJ erred at Step 2, any such error would be harmless since it is apparent from the ALJ's decision that he accounted for Mr. Pafume's difficulties in social functioning. At Step 3, the ALJ found that Plaintiff had "moderate difficulties" in social functioning, and his RFC finding limited Plaintiff to work "that is isolated with occasional supervision." (Tr. 11-12).

## IV. CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 12) be GRANTED and Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 9) be DENIED. Final judgment shall enter in favor of Defendant.

---

[3] The header on Dr. DuWors report indicates that it was faxed on February 16, 2011 which was the date the ALJ mailed out his decision. (Tr. 4, 35).

_/s/ Lincoln D. Almond_
LINCOLN D. ALMOND
United States Magistrate Judge
June 12, 2012